RECEIVED
USDC CLERK, CHARLESTON, SC
2007 SEP 24  P 2: 22

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| James Cornelius Gary, ) | C. A. No. 2:07-0358-GRA-RSC |
| ) | |
| Plaintiff, ) | |
| ) | |
| -versus- ) | **REPORT AND RECOMMENDATION** |
| ) | |
| D. Gordineer, Doctor at ) | |
| Greenwood County Detention ) | |
| Center; and NFN Kirk, Head ) | |
| Nurse at Greenwood County ) | |
| Detention Center, ) | |
| ) | |
| Defendants. ) | |

This civil rights action pursuant to 42 U.S.C. § 1983[1] brought by a former pretrial detainee, now a prisoner, proceeding pro se and in forma pauperis, is before the undersigned United States Magistrate Judge for a report and recommendation on the defendants' summary judgment motion. 28 U.S.C. § 636(b).

On February 5, 2007, the plaintiff, James Cornelius Gary, brought this action alleging inadequate medical care and named as

---

[1] Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of Section 1983, titled a civil action for deprivation of rights reads in relevant portion: the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.
42 U.S.C. § 1983.

defendants D. Gordineer, Doctor at the Greenwood County Detention Center, and NFN Kirk, Nurse at the Greenwood County Detention Center. He prayed for damages for "medical neglect and mental anguish."

Defendant Gordineer answered the complaint on March 2, 2007. Defendant Kirk answered on March 14, 2007, and raised various defenses including failure of service. On May 15, 2007, defendant Gordineer filed a summary judgment motion on the merits of the complaint along with his affidavit. On May 16, 2007, Plaintiff was provided a copy of defendant Gordineer's motion and was given an explanation of dismissal and summary judgment procedure as well as pertinent extracts from Rules 12 and 56 of the Federal Rules of Civil Procedure similar to that required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). On June 13, 2007, defendant Kirk filed a motion for summary judgment based solely on lack of service. On July 2, 2007, Plaintiff was provided a copy of defendant Kirk's motion and another Roseboro order. On July 6, 2007, Plaintiff filed an opposition to the motions along with various unverified exhibits. Lastly, on July 13, 2007, Defendant Kirk filed a reply in which she argued the merits of Plaintiff's claim. Hence it appears consideration of the motions is appropriate.

## SUMMARY JUDGMENT STANDARD

Summary judgment should be granted when the record demonstrates that the requirements of Rule 56(c) have been met. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Summary judgment is mandated where the party opposing the motion has failed to establish the existence of an element essential to his case, and on which he bears the burden of proof. Id., 477 U.S. at 322. The party seeking summary judgment must inform the court of the basis for its motion, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party, however, need not offer proof that negates the opponent's claim; rather, as to issues on which the party opposing the motion has the burden of proof at trial, the party seeking summary judgment need only point to an absence of evidence to support the opponent's claim. The party opposing summary judgment must then point to facts evidencing a genuine issue for trial. Fed. R. Civ. P. 56(c); see also, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

Summary judgment should not be denied merely because the plaintiff raises a "metaphysical doubt" as to the material facts. Mathushita Electrical Industrial Co., Ltd v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Likewise, "unsupported speculation is not sufficient to defeat a summary judgment motion." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987).

If the plaintiff's evidence does not raise a genuine issue as to a material fact, then summary judgment is proper for the defendants. See, Anderson, 477 U.S. at 249-50 (where evidence is not significantly probative, then summary judgment is proper). Furthermore, even as to a material fact, an issue is genuine only where the record establishes that the fact-finder could find, by a preponderance of the evidence, that the plaintiff is entitled to judgment in his favor. Id., 477 U.S. at 252.

### FACTS

The facts either undisputed or according to the plaintiff as the non-moving party and all reasonable inferences therefrom as taken from his verified complaint are as follow:

> "In Greenwood County Detention Center handbook it states that a second opinion will be given by Administrator which is considered 'necessary medical treatment' on a case by case basis. I have been neglected the right by the Jail & medical staff. The book also states that inmates shall be responsible for the procurement and cost of elective medical. It doesn't state for infection to the body which occurred in this nasty and unclean jail. Approximately 2-3 months ago, my skin started to obtain sores, bumps, and rashes. I thought it was the wool blanket so I wrote medical to have a cloth blanket issued. 'Still yet' didn't nothing change. I wrote the proper medical slips and grievances, but ignored by most of the staff including medical. Oct-13-2006 I was place in D-2 with an inmate name James Calhoun. He stated that he had the TB germ, but Lt. Butler ingored that, and put me their anyway. Many weeks later after threatening a lawsuit, they sent me to the doctor. He charge me $5 and said that nothings wrong with my skin. The second visit to the doctor he gave me a prescription for a Lurgic reaction, but he said theirs nothing

4

> wrong. That had no use. My moms Pastor Janet Baily came to visit and she could see the sores bumps rashes on the other side of the visitation glass. The third time He stated that I had gentile warts, but the same sores that on my whole body is on my private also. He stated that the facility wont pay for that medication. It cost $250 which was call in by the Head Nurse Mrs. Kirk. The medical staff and jail is treating me like a lab rat. They want let me see a Dermoltolgist/or skin doctor. I suppose to be a second opinion which they refuse to do. ..."
> (Sic).

Complaint p. 3, 4.

In Plaintiff's affidavit filed in opposition to the summary judgment motion, Plaintiff added that on December 5, 2006, he told defendant Kirk that he was experiencing serious itching, but "Still yet ignored." Additionally, defendant Kirk set up the appointment with the Health Department and told the Health Department that Plaintiff had genital warts even though Plaintiff never said that he had genital warts. Two nurses at the Health Department examined the plaintiff and told him that he did not have genital warts, but that he had scabies. The last mention of either defendant in the affidavit is that at his January 19, 2007, appointment with Dr. Gordineer, the plaintiff threatened to sue Dr. Gordineer if he did not get adequate treatment.

The plaintiff prayed, "have them to pay me for medical neglect and mental anguish. I want them to pay me for all the nights my skin itch & burned. Also for not giving me the proper medical examine. ... If the facility medical staff can't tell me

5

what it is /then a skin doctor is the next step." Complaint p. 5.

In his affidavit, Dr. Gordineer stated that he is a private physician who has contracted with the Detention Center to come to the facility once a week to provide medical care to inmates. Dr. Gordineer first saw the Plaintiff on October 19, 2006. The plaintiff's affidavit indicated that the examination had nothing to do with the matters of which he complains here. Dr. Gordineer next saw the Plaintiff on November 30, 2006, at which time the Plaintiff was complaining of itching all over his body. Dr. Gordineer noted that the plaintiff did have several small papules on his body, but noted there was no severe or serious skin condition. He provided the Plaintiff Vistaril to control the itching because the Plaintiff was allergic to Benedryl. The plaintiff at that time did not request a second opinion and Dr. Gordineer did not believe that a second opinion or an examination by a dermatologist was required. (Aff. Gordineer).

The plaintiff subsequently put it a sick call request to be seen by the doctor on December 14, 2006, but thereafter the plaintiff refused to be seen. (Aff. Gordineer). Dr. Gordineer next saw the plaintiff on December 21, 2006, at which time the plaintiff continued to complain about his skin breaking out. Dr. Gordineer examined the plaintiff and saw no skin condition of any significance. He did not see any type of severe skin condition or any condition which warranted any additional treatment or

referral to a dermatologist. At that examination the plaintiff also complained about a spot on his penis. The doctor determined that the plaintiff appeared to have a genital wart. Dr. Gordineer stated that the Detention Center has a drug formulary which lists medications which he can prescribe to inmates. The formulary does not contain any medication to treat genital warts, and though Dr. Gordineer could have obtained a formulary override, there was no medical reason to do so. Dr. Gordineer stated genital warts are not harmful and are asymptomatic as they do not hurt or itch and treatment would only be necessary to prevent transmission to a sexual partner.

Nonetheless, the plaintiff asked the doctor to call the medication into a CVS pharmacy so that his mother could pick it up. Dr. Gordineer called in a prescription for Aldara. The plaintiff's mother did not pick up the medication because it was too expensive.

Dr. Gordineer next saw the Plaintiff on January 11, 2007. Plaintiff was complaining of itching and Dr. Gordineer observed a skin rash on the Plaintiff which he diagnosed as a Tinea Versicolor which is a common fungal skin rash. Dr. Gordineer stated this condition is not harmful, but it can itch. Dr. Gordineer prescribed an antifungal shampoo, Nizoral. Nizoral is not on the Detention Center drug formulary, but Dr. Gordineer obtained a formulary override to obtain the medication since the

7

plaintiff was symptomatic. Dr. Gordineer instructed the plaintiff to apply the shampoo to the affected area, leave for a total of ten (10) minutes, and then wash off. He told the plaintiff to use the medication only one (1) time and it would take approximately thirty (30) days for the skin to clear. Dr. Gordineer also stated that when the plaintiff previously complained of itching, it could have been Tinea Versicolor, but that it was not visually present at that time.

Dr. Gordineer last saw the plaintiff on January 19, 2007, and the plaintiff complained that his skin was burning. Upon questioning, the plaintiff stated that he had used the Nizoral for five (5) days in a row. Plaintiff admits that Dr. Gordineer told him that Nizoral was only to be used for one (1) day. Dr. Gordineer stated that he is uncertain if the burning skin would be related to the extended use of the Nizoral, but that it could be the cause of the itching. Still, he was not aware of any type adverse affect by using the Nizoral for five (5) days instead of one (1).

Also when the doctor saw the plaintiff on January 19, 2007, the plaintiff again complained about the genital warts. Dr. Gordineer again informed the plaintiff this was not a serious medical condition and would cause him no harm. He further told the plaintiff that he had called in the Aldara as requested, but that it was not picked up. Still, he told Plaintiff that he

would make an appointment for the plaintiff with the Health Department concerning the warts. He was uncertain what action the Health Department would take, but as he did not have medications on the Detention Center Drug Formulary to provide the plaintiff and there was no basis for a formulary override because this was not a harmful or painful condition, he felt it was a good option to send the Plaintiff to the Health Department to see if they could provide treatment for his condition.

The plaintiff was taken to the Health Department on February 13, 2007, at which time the plaintiff complained of a rash and itching which became worse when he became hot or sweaty. The Health Department diagnosed him as possibly having scabies and provided him medication for scabies.

Dr. Gordineer did not see the Plaintiff again after January 19, 2007, but affied at no time when he saw the plaintiff did the plaintiff have any signs or symptoms of scabies. Dr. Gordineer stated he does recall seeing another inmate who had a rash of undetermined origin. The inmate stated that his cellmate had scabies, and as this was a possible cause of the rash, the doctor provided the roommate with treatment for this condition. He was not aware at the time but later determined the plaintiff was that inmate's roommate. (Aff. Gordineer).

Although Dr. Gordineer never saw the plaintiff again, the nurse did contact the doctor on February 25, 2007, and advised

that the plaintiff was complaining of itching again. Dr. Gordineer that day ordered another round of scabies medications for the plaintiff based on the plaintiff's prior diagnosis from the Health Department.

Dr. Gordineer stated in his affidavit that he at all times provided the plaintiff with appropriate medical care and based on his treatment of the plaintiff and review of the records, the plaintiff received appropriate medical care while at the Detention Center. (Aff. Gordineer)

Dr. Gordineer also stated in his affidavit that he does not have control over the cleaning of the Detention Center or the overall condition of the Detention Center. As to Plaintiff's complaint about having to pay to see Dr. Gordineer, Dr. Gordineer stated that this is not his requirement and this was a decision made by the Detention Center. Finally, he stated he does not have control over the cell assignments of detainees. (Aff. Gordineer).

### LAW RELATED TO MEDICAL CARE AFFORDED DETAINEES

Plaintiff was a pretrial detainee at all times relevant to his complaint. Medical claims of a pretrial detainee are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment. See, City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 103 S.Ct. 2979 (1983). However, the inquiry as to whether a pretrial detainee's rights

were violated under the Fourteenth Amendment is the same as that for a convicted prisoner under the Eighth Amendment. See, Martin v. Gentile, 849 F.2d 863, 871 (4th Cir. 1988) (citing Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285 (1976)).

The Eighth Amendment prohibits the infliction of cruel and unusual punishment. See, U.S. Const. Amend. VIII. Accordingly, a plaintiff makes out a constitutional claim if he can establish that the prison medical personnel responsible for his care were deliberately indifferent to his serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976); Amos v. Maryland Dep't of Pub. Safety & Correctional Servs., 126 F.3d 589, 610 (4th Cir. 1997), vacated in part on other grounds, 118 S.Ct. 2339 (1998). These requirements go beyond even a showing of negligence, and requires Plaintiff to establish the defendants acted with an indifference as would "offend evolving standards of decency." Id.

In a § 1983 claim, whether a medical provider has been deliberately indifferent to a plaintiff's serious medical need is a two part inquiry. First, the plaintiff must show that he was deprived of an objectively serious human need. Johnson v. Quinones, 145 F.3d 164 (4th Cir. 1998). Second, the plaintiff must demonstrate that the prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321 (1991).

11

In Estelle v. Gamble, the prisoner contended that other examinations should have been conducted by the prison's medical staff and that X-rays should have been taken. The Supreme Court pointed out that not "every claim by a prisoner that he has not received adequate medical treatment states a violation." Id. at 105. "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988). Cf. Whitley v. Albers, 475 U.S. 312, 320 (1986).

Likewise, under the constitution, state facilities are not required to furnish the best of care, only reasonable care. Vinnedge v. Gibbs, 550 F.2d 926 (4th Cir. 1977). The constitution does not guarantee a plaintiff the treatment of his choice. Jackson v. Fair, 846 F.2d 811 (1st Cir. 1988). The mere failure to treat all medical problems to a prisoner's satisfaction, even if actual medical malpractice is involved, is insufficient to support a claim under § 1983. Sosabee v. Murphy, 797 F.2d 179 (4th Cir. 1986). Even if plaintiff could establish negligence in his medical treatment, his cause of action would be in negligence against the defendants. Section 1983 does not provide for a remedy for violation of state law, but only for violations which rise to the level of unconstitutional deprivation. "Medical malpractice does not become a

constitutional violation merely because the victim is a prisoner." Estelle, supra. Negligence simply is not actionable under 42 U.S.C. § 1983. Daniels v. Williams, 474 U.S. 327 (1986).

## DISCUSSION

A review of the record and relevant case law reveals that defendant Kirk's summary judgment motion based upon lack of service should be denied, but that both defendants are entitled to summary on the merits of Plaintiff's claims.

Kirk contends by brief that the court lacks personal jurisdiction over her because she was not properly served with a copy of the plaintiff's summons and complaint. However, the only evidence of record is the certification of the United States Marshall that service was accomplished on April 16, 2007. Kirk has not filed an affidavit putting the Marshal's certification in dispute. Therefore, it appears that the defendant has not carried her burden at summary judgment to show a genuine material issue of fact in this regard and summary judgment should be denied on her contention that she was not properly served.

Next, assuming that scabies could be deemed a serious medical need, the plaintiff still has failed to show that the defendants were deliberately indifferent to his health. As a result, the defendants should be granted judgment as a matter of law on Plaintiff's medical claim.

The evidence is that Dr. Gordineer saw the plaintiff on at least five (5) occasions, examined him, and repeatedly prescribed medications for his conditions, including Vistoral and Nizoral for the Tinea Versicolor he saw on Plaintiff's skin. Dr. Gordineer stated that the Detention Center Drug Formulary did not have any medication for treatment of genital warts and a formulary override was not warranted as the genital warts would cause no harmful affects such as pain or itching. Though the Detention Center Formulary did not have any medication for genital warts, Dr. Gordineer sent the Plaintiff to the Health Department to determine if they could provide any assistance in his treatment. After the Health Department diagnosed scabies, the defendant treated the plaintiff for scabies.

At most, Plaintiff presented a claim, without proof, that Dr. Gordineer was negligent in failing to diagnose scabies instead of other skin conditions. For the sake of argument, even if Dr. Gordineer were found to be negligent in his treatment of the Plaintiff, which the defendant denied, "medical malpractice does not become a constitutional violation merely because the victim is a prisoner". Estelle, 429 U.S. at 106. Here, the plaintiff disagrees with the treatment he received from Dr. Gordineer, which disagreement wholly fails to state a claim under § 1983. See, e.g., Wright v. Collins, 766 F.2d 841 (4th Cir. 1985).

Plaintiff's case against defendant Kirk fails as well. In his complaint, Plaintiff alleged solely that Kirk called in a prescription for him to a pharmacy but that Plaintiff's mother could not afford the medication and that Kirk generally did not respond to his complaint to his satisfaction. Taken as true, this simply does not rise to the level of a constitutional claim and should be dismissed.

Additionally, to the extent Plaintiff complains that the detention center is dirty or about his housing assignment, he has no evidence that these defendants were responsible for those conditions. Likewise, the defendants did not decide that Plaintiff had to pay $5 for his medical care.

Lastly, to the extent that Plaintiff claims he is entitled to relief because his medical treatment violated terms contained in the Greenwood County Detention Center Handbook, he cannot succeed in a § 1983 suit. Section 1983 is meant to vindicate violations of substantive rights determined under the United States Constitution or other federal law, not claims arising under state law, and certainly not claims arising under a detention center handbook. See, e.g., Weller v. Dep't of Social Servs., 901 F.2d 387, 392 (4th Cir. 1990).

## CONCLUSION

Accordingly, for the aforementioned reasons, it is recommended that Defendant Kirk's motion for summary judgment on

15

the basis that she was not properly served be denied, that the defendants' motions for summary judgment on the merits be granted, that all other motions be denied as moot, and that this matter ended.

Respectfully Submitted,

Robert S. Carr
United States Magistrate Judge

Charleston, South Carolina
September 24, 2007

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court judge need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> P.O. Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985).